UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20340-CR-WILLIAMS(s)

UNITED STATES OF AMERICA

vs.

MASPHAL KRY,

   **Defendant.**

_____/

## MOTION FOR REVOCATION OF AN ORDER OF RELEASE

  The United States of America, by and through its undersigned attorney, and respectfully requests this Court, pursuant to Title 18, United States Code, Section 3145(a)(1), revoke the stayed order to release MASPHAL KRY (hereinafter, "Defendant" or "KRY"), and hold a *de novo* bond hearing. In support of the Motion relies upon the following:

  1. On November 3, 2022, a grand jury in the Southern District of Florida returned an eight (8)-count superseding indictment against Defendant and seven (7) co-defendants. The indictment charges the defendants with serious wildlife trafficking activities over an extended period of time in violation of Title 18, United States Code, Sections 371 and 545. A conservative application of the provisions of the U.S. Sentencing Guidelines, utilizing the likely criminal history category of I, and the significant value of the illegal wildlife trafficked into the United States, results in an Adjusted Offense Level of approximately 28: Zone D (78-97 months). For these reasons, the United States respectfully submits that no conditions of release will reasonably ensure the appearance of the Defendant at further proceedings in this case, and requests that the Defendant be ordered detained pending trial.

  2. On November 17, 2022, federal agents executed an arrest warrant in the Eastern District of New York (EDNY), arresting the Defendant as he arrived at John F. Kennedy International Airport. Defendant, a citizen of the Kingdom of Cambodia, was enroute to Panama City, Panama, and had no plans to remain in the United States. The United States proceeded by

way of proffer and the Affidavit of Special Agent Dorothy Manera, U.S. Fish & Wildlife Service. See Attachment 1 – Affidavit of S/A Manera. The Magistrate Judge presiding over the detention hearing for the Defendant, in United States v. Masphal Kry, No. 22-MJ-1230 (MMH), initially ordered him detained pending trial as a risk of flight and ordered his removal to the Southern District of Florida. The Magistrate Judge gave Defendant leave to re-visit the bond issue. The U.S. Marshall's Service advised that KRY was scheduled to be removed from the EDNY on December 7, 2022.

3. Thereafter, counsel on behalf of Defendant, retained by the Embassy of Cambodia, filed a "letter motion" in the EDNY seeking to revisit the detention order and suggesting that representations made by the Ambassador of Cambodia sufficed to reasonably assure Defendant's appearance at all required hearings and the trial. On December 5, 2022, Defendant proceeded to a renewed detention hearing in the EDNY.  During the hearing, the government renewed its request for detention, citing KRY's lack of any significant contact with the United States, his position as a foreign government official whose crimes involved allegations of corruption, the strength of the government's evidence, and the substantial sentence Defendant faces under the Sentencing Commission Guidelines.

4. The government proceeded by proffer and the only sworn testimony taken was done telephonically by a surety proposed by the defense. No member of the Cambodian Embassy appeared before the Court. However, a previously filed document signed and sealed by the Ambassador of Cambodia had been filed on KRY's behalf.   Letter Motion, EDNY Case No. 22-MJ-1230 (MMH), Docket Entry 10-1.

5. The Magistrate Judge concluded that a bond was appropriate, and Defendant was ordered released on a $75,000.00 personal surety bond with the restriction that he reside at the Cambodian Embassy in Washington, D.C., that he be subject to GPS monitoring and compliance visits by PTS and other government agencies while at the Embassy, and that he attend all hearings in the SDFL as ordered by the District Court. The Magistrate Judge also incorporated the

representations in Docket Entry 10-1 into the Release Order. See Attachment 2 - Release Order and Letter. The bond as noted thereon, was stayed until 5:00 pm on December 6, 2022, and if the government appealed, both the bond and the previously entered removal order stayed pending resolution of the appeal by this Honorable Court.

6. At this time, the government does not have transcripts of the detention hearing, however, it has been ordered and the United States will supplement the record with the transcripts once they are received.

## STANDARD OF REVIEW

### I. LEGAL STANDARD

Under the Bail Reform Act, Title 18, United States Code, Section 3141, *et seq.*, federal courts are empowered to order a defendant's detention upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

Title 18 U.S.C. § 3145(a)(1) provides that, "[i]f a person is ordered released by a magistrate judge," "the attorney for the Government may file, with the court having original jurisdiction of the offense, a motion for revocation of the order or amendment of the conditions of release." The District Court judges review the United States' detention request *de novo*. *United States v. Torres*, 86 F.3d 1029 (11th Cir. 1996); *United States v. King*, 849 F. 2d 485, 489-91 (11th Cir. 1988); *United States v. Hurtado*, 779 F.2d 1467, 1471-1472 (11th Cir. 1985); *United States v. Megahed* 519 F. Supp. 2d. 1236, 1241 (M.D. Fla. 2007); *see also United States v. Hurtado*, 779 F.2d 1467, 1471-1472 (11th Cir.1985). "Review by the district court contemplates an independent consideration of all facts properly before it." *Megahed*, 519 F. Supp. 2d. at 1241. The review of the record must be *de novo*, but a *de novo* hearing is not required. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987). See also, *United States v. King,* 849 F.2d 485, 490-91 (11th Cir. 1988) ("if the district court concludes that the additional evidence does not affect the validity of

3

the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order.").

## **LEGAL ANALYSIS AND ARGUMENT**

The Court should order that the Defendant be held without bond pending the trial of this matter because "no condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required." 18 U.S.C. § 3142(e)(1). The statutory factors enumerated at 18 U.S.C. § 3142(g) strongly support this conclusion.

First, looking to the nature of the offense, 18 U.S.C. § 3142(g), the Defendant is charged with conspiring to illegally import into the United States large numbers of illegally harvested Non-Human Primates (NHPs), over an extended period of time utilizing fraudulent paperwork produced by the same government agency employing both he and co-defendant KEO. This is a serious wildlife offense, contravening not only the laws of Cambodia and the United States, but also the framework established under the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), to which more than 180 countries are parties. In addition, the circumstances of this offense are particularly troubling when deciding whether the Defendant poses a risk of non-appearance it is instructive to note in the Overt Acts that he went so far as to suggest means to more efficiently promote the "smuggling" activities.

Turning to the weight of the evidence, 18 U.S.C. § 3142(g)(2), the weight of the evidence that the Defendant conspired to traffic the NHPs is very strong. The Defendant was captured on video delivering the illegally captured NHPs to the putative "breeding facility" where they were "laundered" through the system, crated, and shipped, all under the cover of fraudulent paperwork. He is readily identifiable in the electronic evidence. Moreover, emails discussing the criminal activity feature him prominently under his assumed alias and link him directly to coordination of the illegal conduct and accepting of illicit payments for the monkey laundering activities. Thus, the weight of the evidence, taken in light of the significant period of incarceration he faces under the Sentencing Guidelines, weighs strongly in favor of detention.

4

Next, the Defendant's history and characteristics, *id.* § 3142(g)(3), also show that he poses a very real risk of non-appearance. The Defendant's connections to a GOC Department, and to a more highly placed co-defendant suggest that despite the sequestration of his passport, he may enjoy support within his government. New travel documents and assistance in leaving the United States are serious concern. In a cautionary tale, that has happened before with defendants who enjoyed governmental connections. See Attachment 3 - NYT Article. His lack of ties to this District is self-evident.

At a detention hearing, the burden rests at all times with the Government to prove, by a preponderance of the evidence that the defendant is a risk of flight. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988)).

The Magistrate Court initially ruled that the Defendant posed a risk of flight but altered her position upon the proffering of a potential surety and the letter contain representations from the Ambassador of Cambodia to the United States of America. Neither singly, nor taken collectively, do they warrant the release of Defendant pending trial of this matter. The Magistrate Judge erred in concluding that the bond imposed would reasonably assure Defendant's appearance at future court proceedings. The government now requests this Honorable Court review the record and revoke the release order for Defendant. In order to consider the appropriateness of the proposed conditions of bond, the United States will review the two elements relied upon by the Magistrate Judge:

**A. The Proposed Surety.**

The surety proffered in this matter is Ms. Um, a California resident related solely through marriage to the Defendant. Curiously, KRY failed to even mention her when originally interviewed by Pre-Trial Services. When interviewed by the government she revealed that she co-owned a donut shop and her assets consisted of a business account holding about $14,000 and a personal account well below that. She also advised that she had $400,000 in equity in a piece of property. That claim was subsequently corrected – downgrading the equity to $200,000, shared among at

5

least three individuals. She also asserted that KRY had visited her home and stayed therein twice over the past 5 years, but incorrectly claimed the most recent visit lasted 2-3 weeks. Government travel records refute her claim since KRY was not in the United States for such a lengthy stay. KRY through counsel later asserted the stay was 5 days.

The Court called Ms. Um, placed her under oath and asked questions which substantially repeated the foregoing information. Ms. Um also stated she did not maintain direct contact with Defendant but that she spoke to other family members in Cambodia by telephone. She is not a direct blood relative of Defendant: KRY is married to Ms. Um's husband sister.

No serious suggestion was made that she could exert influence or supervision from several thousand miles away over a distant relative she has seen only twice since 2018, and even taking the pandemic into account, someone with she maintained little if any remote social contact over the same period.

Despite the foregoing, the Magistrate accepted Ms. Um as the sole surety, despite her apparent lack of assets, insignificant connection to Defendant, and her remoteness from any possibility of direct influence on Defendant and required the posting of a personal surety bond of a mere $75,000.

**B.     The Representations by the Ambassador of Cambodia.**

It is undisputed that Defendant is a national of Cambodia with no ties to the Southern District of Florida. According to the Pre-Trial Services (PTS) Report, he resides in Phnom Penh, Cambodia with his wife and three children. While his parents are deceased, he has six siblings, also Cambodian residents. His employment, close family, home, connections, and financial ties are all to Cambodia. The charges pending actually allege corruption on the part of KRY and his co-defendant Omaliss Keo.

Despite that, by letter dated November 28, 2022, the Ambassador of the Kingdom of Cambodia to the United States sought to ensure KRY's release on bond by proposing a series of assurances regarding conditions that the Embassy was prepared to adopt with respect to KRY. See

Attachment 2 – Release Order and Letter. These included an offer to lodge KRY at the Washington Embassy grounds, to deny KRY permission to leave those grounds except with specific Court or PTS authorization, acceptance of GPS monitoring of KRY while on the grounds, and a waiver of the immunities customarily enjoyed by Embassy grounds to allow entry by federal authorities to carry out necessary orders of the Court. Along with the foregoing, the Ambassador also undertook to insure KRY would appear as necessary at all proceedings and not interpose any immunity claims in connection with efforts to secure his surrender to the Court or its designated agents. These assurances were accompanied by the Ambassador's assurance that the commitments were irrevocable.

While the United States appreciates the efforts of the GOC to facilitate proceedings in this matter, these assurances are both illusory and impracticable.

Embassy premises are considered inviolable under international law, both by treaty and customary international law. See Vienna Convention on Diplomatic Relations, done at Vienna on April 18, 1961, entered into force April 24, 1964, U.N. Treaty Series, vol. 500, p. 95. While a head of mission, such as the Ambassador in the present matter, may authorize entry otherwise precluded by the terms of the Convention, hosts countries, for persuasive policy reasons, are generally loath to do so.

KRY of course, was not at the time of his offense or while on travel through New York, entitled to diplomatic status or protectionsglobally since the credentials of a diplomat must be presented and accepted by the host country – a development unlikely to arise herein.

On the practical side, KRY would be required to travel on multiple occasions to Miami and reside in Miami for periods of time including the trial of this matter. During that period of time, he would be out of any effective control of the GOC. While the Release Order limits his travel to the Districts necessary to perform case-related travel, once embarked on those trips, KRY would

effectively be beyond the control of the Embassy and free to flee the United States.[1]

A more serious concern is the stated irrevocability of the undertakings by the Ambassador. He, of course, serves subject to the direction of his government. While the United States does not question the good faith of the current undertakings, they are subject to the future decisions of the GOC – including the possibility that the decision to waive the protections attached to Embassy premises may be revoked by that government.[2]

Sovereigns can be relied upon to act in their perceived best interests. Should the policy or interests of the GOC be altered, and Defendant be assisted in any way by diplomatic personnel to flee, there is little recourse for the United States or this Court. The maximum "sanction" in such a circumstance would be a possible declaration that the diplomat at issue was *persona non grata*, requiring the diplomat to depart the United States. Since any such assistance would likely be at the direction of eh GOC, the "recall" of one of its diplomats would be of minimal effect.

## CONCLUSION

Neither the minimal connections and nominal bond brought to this issue by the proposed surety, nor the offer of accommodations and oversight in Washington by the Embassy of Cambodia provide reasonable assurances that Defendant will appear as required at Court proceedings. Defendant KRY has significant incentive to flee the jurisdiction if the opportunity is presented, and the United States has demonstrated by a preponderance of the evidence that no combination of conditions is likely to ameliorate that risk. The United States respectfully requests that this Honorable Court revoke the stayed order of release, and order Defendant held without bond pending trial and direct his removal to the Southern District of Florida as provided by the currently

---

[1] A suggestion was made, and rejected by the Magistrate Judge at the December 5 detention hearing that two retired NYPD officers would serve as private guards to convey KRY to the Embassy location in Washington, D.C. While not doubting the professional abilities of those former officers they would have no authority or power beyond any other private citizen and their oversight of no legal force.

[2] The United States Attorney's Office is not now suggesting what position the Dcuited States, and its competent Departments and Agencies might take with respect to an effort by the GOC to revoke the "irrevocable," but noting for the Court's consideration that such an effort would involve foreign policy decisions likely non-justiciable and inevitably interfere with the timely resolution of the pending case.

stayed Order of Removal. Alternatively, the United States would request the Court order the transfer of the Defendant so he may be present for a *de novo* bond hearing before the Court. A proposed Order granting the Government's Motion to Revoke Release Order is attached hereto.

        Respectfully submitted,

        JUAN ANTONIO GONZALEZ
        UNITED STATES ATTORNEY

By: /s/ Thomas Watts-FitzGerald
      Assistant U. S. Attorney
      Florida Bar No. 0273538
      99 N.E. 4th Street
      Miami, FL 33132
      (305) 961- 9413 Office
      (305) 536- 4651 Facsimile

### Certificate of Service

I certify that on December 6, 2022, the foregoing Motion To Revoke Release Order was electronically filed via CM/ECF to effect service on all parties of record to the instant proceeding. Additionally, service has been made to the following email addresses of counsel who appeared for Defendant Masphal Kry at the proceedings in the Eastern District of New York:

Dakota L. Kann; dkann@akingump.com
Ian P. McGinley; imcginley@akingump.com
Mark J. MacDougall; mmacdougall@akingump.com

By: /s/ Thomas Watts-FitzGerald
     Assistant U. S. Attorney

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **22-20340-CR-WILLIAMS(s)**

**UNITED STATES OF AMERICA**

vs.

**MASPHAL KRY,**

      **Defendant.**

_____/

**ORDER**

    Upon consideration of the Government's Motion to Revoke Release Order,

    **IT IS HEREBY ORDERED** that the defendant be temporarily remanded into the custody of the Bureau of Prisons, and the Defendant be transported by the United States Marshal Service to the Southern District of Florida, for the purpose of conducting a *de novo* bond hearing.

    **DONE AND ORDERED** in chambers at Miami, Florida, this _____ day of December 2022.

                                                               _____
                                                               HONORABLE KATHLEEN M. WILLIAMS
                                                               UNITED STATES DISTRICT COURT JUDGE