AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>A SAMSUNG GALAXY S22 ULTRA WIRELESS<br>PHONE, IMEI 350272254624589 | )<br>)<br>)  Case No.  **23mj02003 Goodman**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

A SAMSUNG GALAXY S22 ULTRA WIRELESS PHONE, IMEI 350272254624589,  as more fully described in Attachment A.

located in the _____Southern_____ District of _____Florida_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 16 USC § 3372(a)(2)(A) | Illegal importation, transportation and sale of wildlife |
| 18 USC § 371, 545 | Conspiracy, smuggling goods into the United States |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _90_ days *(give exact ending date if more than 30 days:*  __04/04/2023__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Mark Pruitt*_____
*Applicant's signature*

S/A MARK S. PRUITT, FWS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____FaceTime_____ *(specify reliable electronic means)*

Date:  __01/04/2023__

_____
*Judge's signature*

City and state:  Miami, Florida

U.S. Magistrate Judge JONATHAN GOODMAN
*Printed name and title*

AO106-C
GOVERNMENT
EXHIBIT

CASE NO.  22-20340-CR-WILLIAMS

EXHIBIT NO.  SH-4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN THE MATTER OF THE SEARCH OF**
**A SAMSUNG GALAXY S22 ULTRA**
**WIRELESS PHONE, IMEI**
**350272254624589 CURRENTLY HELD BY**    Case No.  23mj02003 Goodman
**U.S. FISH AND WILDLIFE SERVICE,**
**OFFICE OF LAW ENFORCEMENT,**
**MIAMI,  FL**

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41 FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Mark Pruitt being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination  of an electronic

device which is currently in law enforcement possession, and the extraction from that device of

electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Fish and Wildlife Service (FWS) and

have been since April 2021.  I am presently assigned to the FWS Special Investigations Unit in

Shepherdstown, WV.  Prior to working for the FWS, I was employed as Special Agent with the

U.S. Department of State, Diplomatic Security Service, and the U.S. Environmental Protection

Agency for a total of ten years.   During my time as a Special Agent, I have personally

participated  in  multiple  investigations  that  involved  persons  and  businesses  illegally

commercializing protected wildlife, including investigations which have resulted in the arrest

and conviction of individuals responsible for violations of federal wildlife trafficking laws.  I

have read, studied, and received training on the laws and regulations enforced by the FWS, such as the Endangered Species Act (ESA), the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), and the Lacey Act.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The information contained in this affidavit is based upon my personal knowledge and observations, my training and experience, my conversations with other law enforcement officers and witnesses, and my review of documents and records. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance. A significant provider of the information relied upon is a confidential source (CS) whom FWS has documented as a registered source. This CS is familiar with the operations of an entity engaged in long-tailed macaque trafficking in Cambodia and has proven reliable during this investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a white Samsung Galaxy S22 Ultra wireless telephone, IMEI 350272254624589, hereinafter the "Device."  The Device is currently located at the U.S. Fish and Wildlife Service Office of Law Enforcement in Miami, FL.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      I am presently engaged in an investigation regarding a conspiracy to illegally import, export, and transport in interstate or foreign commerce, Long-tailed macaques (*Macaca fasciciularis*), involving domestic importers in the United States and foreign-based owners of alleged captive breeding farms in Cambodia and elsewhere.

7.      Long-tailed macaques, also known as crab-eating macaques or cynomolugus monkeys, are a species of monkey native to southeast Asia.  These animals are in high demand in the U.S., Europe, China, and Japan for use in scientific research and pharmaceutical testing.

8.      I have reviewed import records submitted to FWS from 2019 to 2021 and found that in 2021 approximately 17,000 Long-tailed macaques from Cambodia were imported into the U.S. with a declared value of approximately $81 million dollars.

9.      CITES is a multilateral treaty that protects over 38,700 species of animals and plants from over exploitation by subjecting the international trade of these species to certain regulatory controls.   Currently, there are 183 parties to the agreement including the United States and Cambodia.

10.      Appendices I, II and III to CITES are lists of species afforded different levels of protection from over-exploitation.  Appendix I lists species that are the most endangered among CITES-listed animals and plants. Appendix II lists species that are not necessarily now threatened with extinction, but which may become so unless trade is closely controlled.

3

Appendix III is a list of species included at the request of a party that already regulates trade in the species and needs cooperation of others to prevent unsustainable or illegal exploitation.

11.     In the United States, CITES is implemented under the authority of the ESA and the regulations promulgated thereunder. 16 U.S.C. § 1538(c) and 50 C.F.R. Parts 14 and 23. A species listed within a CITES appendix cannot be imported into the United States without prior notification to, and approval from, the CITES Management Authority in the exporting country and the FWS.

12.     All non-human primate (NHP) species have a minimum level of protection under Appendix II of CITES, though some are listed as Appendix I.  An Appendix II species may be exported from a foreign country into the United States only if, prior to exportation, the exporter possesses a valid CITES export permit issued by the foreign country of export.

13.     CITES export permits are individually numbered and include information such as the importer of record, exporter, species being traded, a description of the specimens, the CITES Appendix number, a source code, the quantity, and the date of issuance. The source code indicates the particulars of the specimen(s) listed on the CITES Permit: among others, the code "W" denotes a specimen taken from the wild; "R" denotes a ranched specimen, taken as an egg or juvenile from the wild and reared in a controlled environment; "C" denotes animals bred in captivity; all subject to certain other terms and provisions of the Convention.

14.     Long-tailed macaques are listed as a CITES Appendix II species.

4

15.     The Lacey Act, 16 U.S.C. § 3372(a)(2)(A), makes it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulations of any State or in violation of any foreign law.   Furthermore, 16 U.S.C. § 337l(a), defines "wildlife" as "any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof."

16.     Under Title 50, Part 14, of the Code of Federal Regulations, all imports of wildlife, including NHPs, must be declared to the FWS using a "Declaration For Importation or Exportation of Fish or Wildlife" (commonly referred to as a "Form 3-177) and made available for inspection. Form 3-177 requires the importers/agents to provide, among other information, the source of the wildlife they are importing, specifically whether the wildlife was captive-bred, farm-raised, or wild-caught. Importers or their agents must certify that the information furnished is true and complete to the best of his/her knowledge and belief (50 C.F.R. § 14.61).

17.     Beginning in 2010, Cambodian law prohibited the collection and export of wild caught Long-tailed macaques. Cambodia does have a permitting system that allows for the collection of wild Long-tailed macaques by breeding facilities solely for the purpose of supplementing their breeding population. A collection permit must first be obtained from the Cambodian Ministry of Agriculture, Forestry, and Fisheries (MAFF) and such animals cannot be

exported.  In 2019, a Cambodian MAFF official told FWS agents during an in-person meeting that no collection permits had been issued in the preceding ten years.

18.     Vanny Bio-Research Center Cambodia Corporation (VBRC) is a Hong Kong based company that operates Long-tailed macaque breeding farms in Cambodia at Phnom Penh and Pursat.  VBRC is a major supplier of Long-tailed macaques to U.S importers.  Your affiant has reviewed FWS import records from January 2020 through January 2022 and found that VBRC exported approximately 26,300 Long-tailed macaques with a declared value of $105 million dollars to four U.S. importers during that period.

19.     Omaliss KEO is the Director General of MAFF and Chairman of the CITES Scientific Authority for Terrestrial Forest and Wildlife Resources, with oversight and responsibility for the issuance of Cambodian CITES export permits.

20.     Masphal KRY is the Deputy Director of the Department of Wildlife and Biodiversity within MAFF. His department is responsible for issuance of transportation permits which allow companies such as VBRC to transport macaques from the farms to the airport as part of an export shipment.  KRY also oversees the inspections of the facilities, telling FWS agents in a consensual interview on 11/16/2022, that he has visited VBRC on occasion with some members of his staff to investigate and/or report on the number of monkeys and insuring that the number of animals physically at the facility was correct.

21.     On 11/03/2022, a Grand Jury in the Southern District of Florida returned an eight-count superseding indictment adding KRY to a previous indictment returned on 07/28/2022.  In that indictment, the Grand Jury charged KEO and six other foreign nationals with Conspiracy

6

and multiple Smuggling counts, related to the unlawful capture, import, export, sale, and transportation of wild long tail macaques.

22.     Through this investigation, your Affiant has learned that VBRC is not able to meet the needs of foreign export orders for  Long-tailed macaques with its small population of captive bred animals.  The captive bred populations at the two VBRC farms are not managed or supported in a manner that allows sufficient self-sustaining breeding and reproduction to meet the sales demands. To fill the shortfall, VBRC is buying wild-caught macaques from black-market suppliers.  These illegal suppliers include government officials at the Cambodian MAFF, including KEO and KRY. The wild-caught macaques supplied by these illicit suppliers are often illegally taken from national parks and other protected areas in Cambodia.   The suppliers, including KRY and other MAFF officials, deliver the wild caught animals to the VBRC farms where they are commingled with captive bred macaques and held for sale and export to the United States and elsewhere.  These shipments are represented to the FWS via the Declaration for Importation of Wildlife (Form 3-177) to contain only captive bred macaques.

23.     Through this investigation, your Affiant has learned that Masphal KRY personally participated in the illegal sale and delivery of wild caught macaques to VBRC's Cambodian farms on at least four occasions from 2018-2020.  During this time, KRY also personally met with a representative of VBRC and received an advance payment of $10,000 in cash for the subsequent collection and delivery of 300 wild caught macaques to a VBRC farm.

24.     The CS informed your Affiant that KRY uses the smartphone texting application "Telegram" for communications and provided screenshots of a Telegram page with KRY's

7

profile photo using the screen name "Phal (FA)," believed to be short for "Masphal" and "Forestry Administration." KRY specifically provided his cellular Device information to the CS to promote the criminal conduct involving the NHPs. It is reasonable to conclude therefrom that the Device may contain communications with others currently unknown to the investigation who are culpable in aiding and abetting the criminal conduct, or individuals known to the investigation but not currently charged.

25.     KRY told FWS agents in a consensual, recorded interview after his arrest on 11/16/2022 that the Device is his phone and that the contact information for his female contact at VBRC is saved in the Device.

26.     Your Affiant knows from training and experience that wildlife traffickers frequently utilize smartphones to facilitate commercial transactions, communicate via text, voice, instant messaging applications, and social media applications.   The devices are capable of connecting to the internet, sending and receiving text messages, sending, receiving, and viewing email messages, placing and receiving phone calls, storing communications, photographs, videos, documents, and other electronic data related in part, to the business of capturing, shipping, selling, transporting, and receiving wildlife.

27.     The Device is currently in the lawful possession of the FWS.  FWS agents seized the Device from Masphal KRY on 11/16/2022 at JFK International Airport, New York, incident to his arrest on a court authorized arrest warrant issued in the Southern District of Florida. Therefore, while the FWS might already have all necessary authority to examine the Device, I

seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

28.     The Device is currently in storage at the FWS Office of Law Enforcement, in Miami, FL.  Based on your Affiant's training and experience, I know that the Device has been stored in a manner in which its contents are in substantially the same state as they were when the Device first came into the possession of the FWS.

## **TECHNICAL TERMS**

29.     Based on training and experience, your Affiant uses the following technical terms to convey the following meanings:

a.   Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

9

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device, including wireless cellphones equipped with GPS capability, uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that

10

are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.   Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

30.    Based on your Affiant's training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http:// Galaxy S22 Ultra vs S21 Ultra 5G - Compare Phone Features | Samsung US , I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Examining data stored on such devices can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.    Based on my knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time.  Similarly, things that have

11

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

32.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a cellular device is evidence may depend on other information stored thereon and the application of knowledge about how a cellular device behaves.  Therefore, contextual

12

information necessary to understand other evidence also falls within the scope of the warrant.

   e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant sought would permit the examination of the Device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire Device, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34.   *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve physical intrusion onto a premises.   Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35.   Your Affiant respectfully submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

36.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application

13

search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations, as not all of the targets of this investigation are aware of the nature and scope of the investigation, despite the return of the superseding indictment.  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness. Additionally, the processing and review of the data obtained through this warrant will necessarily consume a period of time.

Respectfully submitted,

MARK PRUITT
Special Agent
United States Fish and Wildlife Service

Attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime this  4th  day of January 2023.

JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

14

23mj02003 Goodman

## ATTACHMENT A

The property to be searched is a white Samsung Galaxy S22 Ultra wireless telephone, IMEI 350272254624589, hereinafter the "Device."  The Device is currently located at the U.S. Fish and Wildlife Service Office of Law Enforcement in Miami, FL.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B, hereto.

23mj02003 Goodman

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 USC § 371; 18 USC § 545; 16 USC § 3372(a)(2)(A); and involve Masphal KRY since December 19, 2017, including:

   a.   Information related to making and receiving phone calls, emails, smartphone application communications via, including but not limited to, Whatsapp, Kakao, WeChat, Telegram, Signal and Tango with foreign buyers, illicit suppliers, breeding farms including VBRC, the Cambodian Ministry of Agriculture, Forestry, and Fisheries officials, and other Cambodian government officials.

   b.   Information related to the trapping, poaching, purchase, sale, shipping, transportation, import, export, smuggling, and trafficking of Long-tail macaques.

   c.   Access device information, numbers, security codes, and pin numbers.

   d.   Information showing the phone number of the mobile device.

   e.   Information revealing the geographical coordinates of the mobile device.

   f.   Records related to other facilities, storage devices, or services (such as email addresses, IP addresses, phone numbers) that may contain electronic evidence tending to show efforts to unlawfully traffic Long-tail macaques.

   g.   Information tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking of Long-tail macaques.

h.  Information related to identity the user of, or persons with control over or access to, the subject device.

i.  Information tending to identify the creator or recipient of, or establish the time of creation or receipt of communication, records, or data related to the purchase, sale, smuggling, shipping, and transportation of Long-tail macaques; and

j.  Metadata for images related to the commercialization of Long-tail macaques including but not limited to photographs of Long-tail macaques, facilities, individuals, conveyances, shipping containers, documents, equipment utilized to trap, contain or transport Long-tail macaques.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original       ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| A SAMSUNG GALAXY S22 ULTRA WIRELESS | ) |
| PHONE, IMEI 350272254624589 | ) |
| | ) |

Case No.   23mj02003 Goodman

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____SOUTHERN_____ District of _____FLORIDA_____
*(identify the person or describe the property to be searched and give its location)*:
A SAMSUNG GALAXY S22 ULTRA WIRELESS PHONE, IMEI 350272254624589,  as more fully described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
THE FRUITS, EVIDENCE AND INSTRUMENTALITIES OF VIOLATIONS OF FEDERAL LAW AS MORE FULLY DESCRIBED IN ATTACHMENT B, HERETO.

**YOU ARE COMMANDED** to execute this warrant on or before _____January 18, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____DUTY MAGISTRATE_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of _____04/04/2023_____ .

Date and time issued:   __1/4/2023 at 4:58 PM__

_____
*Judge's signature*

City and state:        _____MIAMI, FLORIDA_____

U. S. MAGISTRATE JUDGE JONATHAN GOODMAN
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>23mj02003 Goodman | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

### Certification

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____          _____
                                                                  *Executing officer's signature*

                                                       _____
                                                                  *Printed name and title*

23mj02003 Goodman

## ATTACHMENT A

The property to be searched is a white Samsung Galaxy S22 Ultra wireless telephone, IMEI 350272254624589, hereinafter the "Device." The Device is currently located at the U.S. Fish and Wildlife Service Office of Law Enforcement in Miami, FL.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B, hereto.

23mj02003 Goodman

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 USC § 371; 18 USC § 545; 16 USC § 3372(a)(2)(A); and involve Masphal KRY since December 19, 2017, including:

   a.   Information related to making and receiving phone calls, emails, smartphone application communications via, including but not limited to, Whatsapp, Kakao, WeChat, Telegram, Signal and Tango with foreign buyers, illicit suppliers, breeding farms including VBRC, the Cambodian Ministry of Agriculture, Forestry, and Fisheries officials, and other Cambodian government officials.

   b.   Information related to the trapping, poaching, purchase, sale, shipping, transportation, import, export, smuggling, and trafficking of Long-tail macaques.

   c.   Access device information, numbers, security codes, and pin numbers.

   d.   Information showing the phone number of the mobile device.

   e.   Information revealing the geographical coordinates of the mobile device.

   f.   Records related to other facilities, storage devices, or services (such as email addresses, IP addresses, phone numbers) that may contain electronic evidence tending to show efforts to unlawfully traffic Long-tail macaques.

   g.   Information tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking of Long-tail macaques.

h.  Information related to identity the user of, or persons with control over or access to, the subject device.

i.  Information tending to identify the creator or recipient of, or establish the time of creation or receipt of communication, records, or data related to the purchase, sale, smuggling, shipping, and transportation of Long-tail macaques; and

j.  Metadata for images related to the commercialization of Long-tail macaques including but not limited to photographs of Long-tail macaques, facilities, individuals, conveyances, shipping containers, documents, equipment utilized to trap, contain or transport Long-tail macaques.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.