UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20340-WILLIAMS

UNITED STATES OF AMERICA,

vs.

MASPHAL KRY,

      **Defendant.**

_____/

### DEFENDANT MASPHAL KRY'S MOTION TO CONDUCT DEPOSITIONS PURSUANT TO FED. R. CRIM. P. 15

Defendant Masphal Kry, by and through undersigned counsel, respectfully moves this Court, in connection with the above-captioned case, to authorize the depositions of Vich Soveacha, San Sovannary, and Chheav Sopheaktra in Phnom Penh, Cambodia, pursuant to Rule 15 of the Federal Rules of Criminal Procedure. Counsel for Mr. Kry submits that the grounds for this motion are as follows.

### PROCEDURAL BACKGROUND

On May 30, 2023, defense counsel informed the Court and the government of its intention to seek "safe passage" letters from the Department of Justice ("DOJ") for certain defense witnesses located abroad, and to move the Court for an order authorizing Rule 15 depositions if the government declined to issue safe passage letters. *See* May 30, 2023 Hr'g Tr. at 23:20-25:12.

On June 8, 2023, defense counsel formally requested that the government provide safe passage for three named Cambodian officials who the defense anticipated may serve as witnesses at trial. The request specifically sought limited assurances from the government that these witnesses could travel to the United States without fear of arrest, service of legal process, or risk

1

of being detained. *Id.* The government responded on June 26, 2023 that it would not grant defense counsel's requests for safe passage. In light of the government's position, and in order to preserve Mr. Kry's Sixth Amendment right to present witnesses in his defense, Mr. Kry respectfully moves this Court for an order authorizing depositions of certain witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure.

**FACTUAL BACKGROUND**

The Indictment alleges that Mr. Kry, seven co-defendants (including Mr. Kry's supervisor, Omaliss Keo), and two unindicted co-conspirators participated in a conspiracy to smuggle wild-caught long-tailed macaques into the United States in violation of the Lacey Act (18 U.S.C. § 371) and the federal smuggling statute (18 U.S.C. § 545) by allegedly presenting false CITES permits and USFWS Form 3-177s that indicated that the animals were captive bred. *See generally*, ECF No. 9.

The Indictment alleges that Mr. Keo had "oversight and responsibility for the issuance of CITES export permits" and had authority over Cambodia's national parks as the Director General of the Ministry of Agriculture, Forestry, and Fisheries of the Royal Kingdom of Cambodia ("MAFF") and as the Chairman of the Scientific Authority for Cambodia's CITES Management Authority. Ind. at 4, 9. Mr. Kry served as the Deputy Director of the Department of Wildlife and Biodiversity ("DWB") within the Forestry Administration ("FA") of MAFF.[1] The Indictment does not allege that Mr. Kry had any responsibility for or involvement in the administration or enforcement of CITES. *See* Ind. at 4.

---

[1] In the summer of 2022, Mr. Kry was promoted from Deputy Director to Director of the Department of Wildlife and Biodiversity.

2

In furtherance of the alleged conspiracy, the government claims that Mr. Kry and other FA officials "illegally acquired" and delivered 92 long-tailed macaques over four separate visits to the VBRC breeding farm in Pursat, Cambodia in 2019 and 2020. Ind. at 7, 13-15. But in June 2018—before Mr. Kry is alleged to have delivered <u>any</u> long-tailed macaques to VBRC—the Secretary General of the MAFF executed a letter authorizing VBRC to collect 2,000 long-tailed macaques to raise, care for, and breed. *See id.* at 9 (noting that the "Minister had approved and issued the collection quota"); ECF No. 93-1 at 5-6 (Certified Letters from MAFF and Official Translations). This authorization followed (i) VBRC's April 18, 2018 request to the MAFF that it be permitted to "collect 2,000 long-tailed macaques which are living in zoos and public places and causing risks to people, to raise, care and breed in our farm," *id.* at 11-13, and (ii) the MAFF's performance of population surveys of long-tailed macaques from April 2018 to June 2018, *id.* at 7-10. Consistent with this June 2018 directive, Mr. Kry and other Cambodian Government officials collected long-tailed macaques from public areas.

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Criminal Procedure provides in part that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and the interest of justice…." Fed. R. Crim. P. R. 15(a)(1). Rule 15 further grants the court the authority to "require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data." *Id.*

To establish exceptional circumstances under Rule 15, a movant must show that (1) the witness is unavailable to tesify at trial; (2) without this testimony, injustice would result because testimony material to the movant's case would be absent; and (3) countervailing factors do not

3

render the deposition unjust to the nonmoving party. *See United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993); *United States v. Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995).

For purposes of Rule 15(a), a witness is unavailable if the movant can show "a substantial likelihood . . . that the proposed deponent will not testify at trial." *Drogoul*, 1 F.3d at 1553. "[A] substantial likelihood of unavailability can be found when the proposed deponent is beyond the subpoena powers of the United States and has declared his unwillingness to testify at trial, or even having declared willingness to testify cannot be subpoenaed if he changes his mind." *Ramos*, 45 F.3d at 1523 (citing *Drogoul*, 1 F.3d at 1553, 1557); *see United States v. Des Marteau*, 162 F.R.D. 364, 368 (M.D. Fla. Apr. 25, 1995) (witnesses residing in Canada were beyond the subpoena power of the court and were thus unavailable; granting defendant's motion to conduct Rule 15 depositions); *United States v. Gonzalez-Vasquez*, No. 08-10071-CR-MOORE/SIMONTON, 2009 U.S. Dist. LEXIS 97553, at *5-6 (S.D. Fla. Oct. 1, 2009) (deponents located in Cuba were unavailable within the meaning of Rule 15; granting defendant's motion to conduct Rule 15 depositions). The moving party may use "affidavits or otherwise" to demonstrate a prospective deponent's unavailability. *Drogoul*, 1 F.3d at 1553. However, because Rule 15 does not explicitly require supporting affidavits, "representations made by counsel in open court have been held sufficient to establish probable unavailability." *Des Marteau*, 162 F.R.D. at 368. Notably, a conclusive finding regarding the witness's availability is not required before a deposition may take place. *Drogoul*, 1 F.3d at 1553.

"The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *Drogoul*, 1 F.3d at 1552. "Material" has been interpreted as a "term of art" meaning "*material to the [moving] party*." *Ramos*, 45 F.3d at 1523. For Rule 15 motions, courts have applied the same materiality

4

standards developed by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *United States v. Erdmann*, No. 2:16-cr-62-FtM-UAMRM, 2016 U.S. Dist. LEXIS 148944, at *6-7 (M.D. Fla. Oct. 27, 2016). "The materiality analysis requires examining the expected testimony of the proposed deponent 'to ascertain (i) whether it is exculpatory, i.e., tends to negate an element of the crime or to establish a defense, and (ii) whether it is cumulative of other evidence.'" *Id.* (quoting *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009)); *United States v. Cordoba*, No. 12-20157-CR-ROSENBAUM, 2012 U.S. Dist. LEXIS 116801, at *13 (S.D. Fla. Aug. 20, 2012) (granting defendant's motion for Rule 15 depositions where the proferred testimony would negate the knowledge element of the alleged crime). To satisfy this burden, the movant "must alert the district court to the substance of the evidence that is at peril of being excluded." *Ramos*, 45 F.3d 1519.

Courts in this Circuit also consider whether "countervailing factors" will result in injustice to the nonmoving party if the deposition is taken. *Ramos*, 45 F.3d at 1523 (applying *Drogoul*). "A non-moving party bears a high burden on this issue." *United States v. O'Sullivan*, 553 F. Supp. 2d 1349, 1352 (M.D. Fla. 2008).

## ARGUMENT

Rule 15 depositions of Mr. Soveacha, Ms. Sovannary, and Mr. Sopheaktra are necessary and proper because (a) all three witnesses are unavailable within the meaning of Rule 15, (b) each will provide testimony and/or documents material to Mr. Kry's defense consistent with *Brady* and its progeny, and (c) no counterveiling factors will result in injustice to the government by the taking of these depositions.

### A. The prospective witnesses are located outside of the United States and unavailable under Fed. R. Crim. P. 15(a).

The three prospective witnesses are "unavailable" within the meaning of Rule 15 because they are all foreign nationals, residing overseas, and beyond the subpoena power of the United States. *See Drogoul*, 1 F.3d at 1553. Mr. Soveacha, Ms. Sovannary, and Mr. Sopheaktra are all Cambodian citizens who serve as Cambodian government officials and reside in Cambodia. Courts routinely authorize depositions for witnesses who are located overseas and cannot be subpoenaed. *See, e.g.*, *Des Marteau*, 162 F.R.D. at 368 (issuing Rule 15 deposition orders where witnesses residing in Canada were beyond the subpoena power of the court); *Gonzalez-Vasquez*, 2009 U.S. Dist. LEXIS 97553, at *5-6 (issuing Rule 15 deposition orders where witnesses located in Cuba were unavailable within the meaning of Rule 15). Without assurances of safe passage—which the government has declined to provide—counsel for the three prospective Cambodian witnesses has conveyed to defense counsel that they are unwilling to voluntarily travel to the United States to testify, though each witness has conveyed a willingness to be deposed in Phnom Penh, Cambodia.[2] Further, even if one of these witnesses agreed to come to the United States to testify, they would still be "unavailable" under Rule 15, since the witness could change his mind, and remain beyond the Court's subpoena power. *See Drogoul*, 1 F.3d at 1557.

### B. Each witness will provide testimony material to Mr. Kry's defense.

Each prospective witness's testimony "goes to the very heart of the government's allegations" and is material to Mr. Kry's defense. *See Drogoul*, 1 F.3d at 1554. The government's case cannot withstand affirmative evidence that: (1) Mr. Kry was authorized by the Cambodian

---

[2] The government suggested during the July 12, 2023 status hearing that the Rule 15 depositions could occur in a country other than Cambodia. The witnesses have not consented to travel to a foreign country for the Rule 15 depositions. Further, the Court's Rule 15 order would not be enforceable in a country that does not have jurisdiction over the deponents.

government to collect long-tailed macaques from public areas and deliver them to VBRC; (2) Mr. Kry would not have known what VBRC did with these animals after their delivery; and (3) Mr. Kry did not have authority over Cambodia's CITES Management Authority. Each of these witnesses are critical to addressing these questions.

    i.    <u>San Sovannary's proffered testimony is material.</u>

San Sovannary serves as an Officer for the Department of Wildlife and Biodiversity. As a records custodian for the MAFF, Ms. Sovannary will authenticate records maintained by MAFF in the ordinary course including, without limitation, records associated with the authorization of VBRC to collect up to 2,000 long-tailed macaques from certain public areas and other records maintained by MAFF that demonstrate that long-tailed macaques in certain public areas ("pest monkeys") are aggressive, destructive, and are viewed as a public health threat. Ms. Sovannary is expected to testify to the authority bestowed upon Mr. Kry to collect long-tailed macaques pursuant to these authenticated records. Ms. Sovannary's expected testimony will support Mr. Kry's defense that he was directed to collect and permitted to deliver the animals to VBRC.

Moreover, the government will be required to establish both that VBRC exported monkeys collected by Mr. Kry and that Mr. Kry <u>knew</u> that VBRC did so. Ms. Sovannary is expected to testify about the procedures followed by the DWB when Cambodia's breeding farms request an export quota. In line with these procedures, and contrary to the Indictment's allegations, the export quota issued by the DWB is not a CITES permit, but instead certifies that the facility has a sufficient number of animals available for export. Cambodia's CITES Management Authority determines whether a CITES permit is granted. As an employee of the DWB, Ms. Sovannary has inspected breeding farms, including VBRC's farms, on numerous occasions. She is expected to testify about the process that she and other Cambodian Government officials follow when inspecting breeding facilities and the limited access DWB officials have to the breeding facilities

and their records. Ms. Sovannary will further testify that because of these procedures and the limited records provided to DWB officials, neither Mr. Kry, nor any other Cambodian official, could know whether the monkeys set for export were either captive bred or wild-caught.

Ms. Sovannary's expected testimony will provide material evidence that: (i) Mr. Kry was authorized to collect long-tailed macaques from defined public spaces, following complaints by local citizens and foreign embassies; (ii) the DWB conducts limited checks of the breeding facilities prior to export; (iii) Mr. Kry reasonably believed that VBRC was acting in full compliance with the MAFF order, namely maintaining the newly obtained long-tailed macaques as breeding stock; and (iv) the CITES Management Authority determines whether an export permit is granted, not MAFF. Ms. Sovannary's expected testimony is material to Mr. Kry's defense.

    ii.    <u>Chheav Sopheaktra's proffered testimony is material.</u>

Chheav Sopheaktra serves as the acting Director of the DWB. Mr. Sopheaktra is expected to testify (a) that in his role—the role held by Mr. Kry at the time of his arrest—he has no authority to issue CITES export permits, nor is he informed when CITES export permits are issued; (b) to the public health problems caused by long-tailed macaques in Cambodia's public urban areas and community forests; and (c) regarding the Cambodian Government's attempts to deal with this public health issue by authorizing the collection of "pest monkeys" from defined public spaces.

In order to convict Mr. Kry, the government must prove that Mr. Kry <u>knew</u> that the long-tailed macaques that he delivered to VBRC were being exported to the United States. Mr. Sopheaktra's expected testimony will directly refute this assertion by proving that the DWB has no authority to approve shipments for export.

Mr. Sopheaktra's testimony will provide material evidence that: (i) Mr. Kry could not have known that the animals he delivered to VBRC would be exported to the United States; (ii) Mr. Kry was authorized to collect these monkeys as a public health measure; and (iii) neither Mr. Keo nor

8

Mr. Kry would have had the authority to issue the collection of long-tailed macaques from protected national forests. His testimony is exculpatory and material to Mr. Kry's defense.

iii. <u>Vich Soveacha's proffered testimony is material.</u>

Vich Soveacha serves as an Attorney to the Royal Government of Cambodia. Mr. Soveacha is expected to testify that Mr. Kry was authorized to collect long-tailed macaques pursuant to the Secretary General of the MAFF's letter authorizing VBRC to collect 2,000 long-tailed macaques to raise, care and breed from public spaces and zoos; under Cambodian law, the Ministry of Environment controls and oversees the national parks and protected areas, not MAFF or CITES; that the DWB and Cambodia's CITES Management Authority are entirely separate entities; and that MAFF officials—including Mr. Kry and Mr. Keo—cannot issue CITES export permits.

This testimony is relevant to a jury's finding of whether Mr. Kry was authorized by, or believed he was authorized by, the Cambodian government to collect and deliver the long-tailed macaques to VBRC, as well as the jury's finding of whether Mr. Kry was acting pursuant to a conspiracy, and with the requisite intent. Further, the government alleges that Mr. Keo had authority over Cambodia's "National Parks and protected areas," and could therefore direct the illegal collection of long-tailed macaques from such areas. *Id.* at 8. Testimony regarding the organization of the Cambodian government and authority held by MAFF as opposed to Cambodia's CITES Management Authority is material to Mr. Kry's defense.

In sum, Mr. Soveacha's expected testimony will provide material evidence that: (i) the Cambodian government authorized Vanny's to collect long-tailed macaques from certain public areas, including local parks, pagodas, and urban areas; (ii) this collection was lawful under Cambodian law; and (iii) neither Mr. Keo nor Mr. Kry had the authority to instruct individuals to collect monkeys from protected forests.

### C. No countervailing factors exist that would make depositions in this case unjust.

The government can identify no countervailing factors that would make conducting depositions in this case unjust. Mr. Kry is a Cambodian national, employed by the Ministry of Agriculture, Forestry and Fisheries of the Kingdom of Cambodia. He is charged in a superseding indictment with collecting long-tailed macaques, in Cambodia, at the direction of his superiors in the Cambodian Government. It should come as no surprise to the government that exculpatory witnesses reside in Cambodia. Justice requires that Mr. Kry be permitted to conduct Rule 15 depositions of these witnesses in Cambodia. Finding otherwise would deprive Mr. Kry of the right to have witnesses testify in his defense.

## CONCLUSION

For the reasons stated above, Mr. Kry respectfully moves the Court to grant his motion for Rule 15 depositions.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rules 7.1 and 88.9, counsel for Mr. Kry has conferred with the government regarding this Motion. The government declined to provide its position as to the relief Mr. Kry requests in this motion, stating that it needed more information than what has already been provided to it at public hearings and in other correspondence. Mr. Kry believes he has provided the government with sufficient information to take a position.

Dated: July 28, 2023                         Respectfully submitted,

By:     **Mark J. MacDougall**
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
Allison T. Coffin (*Pro Hac Vice*)
Dakota L. Kann (*Pro Hac Vice*)
Jane M. Mahan (*Pro Hac Vice*)
Nicole L. Franklin (*Pro Hac Vice*)
*Counsel for Masphal Kry*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 887-4000
Fax: (202) 887-4288
E-mail: mmacdougall@akingump.com
        shmitchell@akingump.com
        acoffin@akingump.com
        dkann@akingump.com
        jmahan@akingump.com
        nfranklin@akingump.com

**John R. Byrne**
John R. Byrne (Fla. Bar Number: 0126294)
john@maderalbyrne.com
*Counsel for Masphal Kry*
Maderal Byrne & Furst PLLC
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 520-5690