UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20340-WILLIAMS

UNITED STATES OF AMERICA,

vs.

MASPHAL KRY,

      Defendant.

_____/

**DEFENDANT MASPHAL KRY'S REPLY IN SUPPORT OF MOTION TO CONDUCT DEPOSITIONS PURSUANT TO FED. R. CRIM. P. 15**

The Court should grant Mr. Kry's request to conduct Rule 15 depositions because: (i) each witness remains beyond the subpoena power of the Court, (ii) Mr. Kry has established materiality with respect to each witness, (iii) courts do not evaluate whether a Rule 15 deposition should be taken based on the admissibility of such material evidence, and (iv) the government's perceived security and logistical concerns do not outweigh Mr. Kry's interest in obtaining these witnesses' live testimony.

I.     **The Witnesses are Unavailabile**

The government argues—without basis in law or in fact—that the witnesses' unavailability is "self-imposed" because they were previously willing to travel to the United States with the protections afforded by a safe passage letter. As a matter of law, the witnesses are beyond the Court's subpoena power and are therefore unavailable under Rule 15, irrespective of whether they were willing to travel to the United States with the protections afforded by a safe passage letter. *See United States v. Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995) (citing *United States v. Drogoul*, 1 F.3d 1546, 1553, 1557 (11th Cir. 1993)). The decision of whether to afford a witness a safe

passage letter is a decision left entirely to the executive branch, a fact repeatedly affirmed by the government to this Court. The government declined to issue safe passage letters for these witnesses, even though the government has now confirmed that it is unaware of any investigations, pending charges, or INTERPOL notices for these witnesses. *See* ECF No. 160 at 7 n.3. After considering the government's decision, each witness subsequently consulted with independent counsel and determined that they would be unwilling to travel to the United States without such protections. The witnesses' present unwillingness to testify at trial is a natural consequence of the government's refusal to provide them with safe passage letters.

## II.     The Witnesses Possess Material Testimony

The government concedes the materiality of certain aspects of the proffered testimony of each witness. Thus the materiality inquiry should be resolved in favor of the defense. Nevertheless, in an effort to distract from that concession, the government extracts a handful of propositions from Mr. Kry's motion in an attempt to argue that the depositions should not be taken on grounds other than materiality.

The government's paramount objection to the materiality of the witnesses' testimony is that it is not admissible. A court may deny a request for a Rule 15 deposition on the basis of admissibility only if it is "*abundantly* clear that the deposition[] could not possibly be admitted at trial." *Drogoul*, 1 F.3d at 1555 (emphasis added).

The government does not object to Ms. Sovannary serving as a custodian of records, and does not claim that testimony regarding these records is irrelevant. Thus the government concedes that her testimony regarding the records satisfies the materiality standard. Contrary to the government's claim about the remainder of Ms. Sovannary's expected testimony, testimony regarding practices within the MAFF when inspecting breeding farms is clearly relevant to the

Indictment's charges. The Indictment alleges that members of the conspiracy "utilized the services of MAFF and its employees to further the purpose and objects of the conspiracy." Ind. at 8. Ms. Sovannary's testimony regarding the MAFF's, DWB's, and Cambodian CITES authority's processes and procedures when evaluating a breeding farm's request to obtain an export quota is relevant to the Indictment's claims. This testimony is also relevant to Mr. Kry's proffered defense that the Cambodian government authorized Mr. Kry, or Mr. Kry believed he was so authorized, to do those acts that the government seeks to tie to a criminal conspiracy. So, while Ms. Sovannary could not provide admissible testimony as to what Mr. Kry believed at the time, she can provide material testimony regarding the processes that are relevant to this defense.

The government states that Mr. Sopheaktra's testimony "may . . . be material." ECF No. 160 at 4. Mr. Sopheaktra currently holds the position that Mr. Kry held at the time of his arrest. His testimony regarding the duties he holds in this position, his visibility into the CITES permit process, and his role in approving CITES export permits, among other topics, is material under Rule 15 because this testimony may negate the government's assertion that Mr. Kry, through his position in the DWB, had insight into or knew VBRC exported these long-tailed macaques to the United States. *See United States v. Erdmann*, No. 2:16-cr-62-FtM-UAMRM, 2016 U.S. Dist. LEXIS 148944, at *6-7 (M.D. Fla. Oct. 27, 2016) (holding that evidence is material if it tends to negate an element of the crime or to establish a defense).

The government concedes that Mr. Soveacha's testimony is material. *See* ECF No. 160 at 5. The governent's lone objection with respect to Mr. Soveacha's testimony is that he will testify as an expert witness. This is not so. As defense counsel has now twice represented to the government, Mr. Soveacha will testify as a lay witness and representative of the Cambodian government. The fact that Mr. Soveacha's testimony may touch on matters pertaining to the

3

Cambodian government, including the roles and responsibilities of certain Cambodian agencies, does not change this analysis. In any event, should Mr. Soveacha provide improper expert testimony, the government can oppose the admission of Mr. Soveacha's testimony at trial.

**III.     Counterveiling Factors Do Not Render the Proposed Depositions Unjust**

Mr. Kry's right to present witnesses in his defense cannot be curtailed by the inconvenieces of conducting foreign depositions. This is particularly true where, as here, the government engaged in foreign surveillance for over four years and nearly all the conduct alleged in the Indictment relates to conduct that occurred in Cambodia. It can be of no surprise that Mr. Kry intends to call witnesses located in Cambodia.

The "[c]ollateral issues" referenced by the government do not render the Rule 15 depositions unjust, and the government's assertions about the convenience of conducting these depositions are unsubstantiated. *See* ECF No. 160 at 6-8.

*United States v. Khan*, 794 F.3d 1288 (11th Cir. 2015), is instructive and clearly distinguishable from this case. There, the defendant was indicted on terrorism-related charges and sought Rule 15 depositions of his fugitive codefendants. *See id.* at 1307. Complications emerged in taking the depositions because the Department of Justice informed the U.S. Attorney's Office in the Southern District of Florida that the depositions would require prior approval of the government of Pakistan, the government attorneys would be required to secure diplomatic passports and Pakistani visas, and the depositions could not take place in the U.S. embassy or consulate because the witnesses, suspected terrorists, would be a security threat. Unlike in *Khan*, the government attorney in this case has not conferred with Main Justice regarding procedures for

4

the Rule 15 deposition, inquired into the time needed to secure visas for the Rule 15 depositions[1], or determined whether the Rule 15 depositions could be held at the U.S. embassy. Rather, each of the government's proffered reasons for opposing the Rule 15 depositions are pure conjecture.

The government's "security concerns" likewise do not render the Rule 15 depositions unjust. *See* ECF No. 160 at 5-8. Again, these concerns are speculative, and unlike the defendant and witnesses in *Khan*, Mr. Kry and the Cambodian witnesses are not suspected to be violent international terrorists. The government attorney has not reached out to the Department of State, Main Justice, or the Cambodian government to request assistance in securing diplomatic visas, which would shield the government attorney from whatever danger he suspects lurks in Cambodia.[2] The Cambodian government maintains strong diplomatic ties with the United States. *See* Dept. of State Fact Sheet: The United States-Cambodia Relationship (Aug. 2, 2022), https://www.state.gov/the-united-states-cambodia-relationship/. The government's allegation that the Cambodian government would detain or otherwise harm prosecutors acting on behalf of the United States is entirely unfounded. *See, e.g.*, Dept. of State: Cambodia Travel Advisory (July 24, 2023), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/cambodia-travel-

---

[1] The government previously represented to the Court, in opposing Mr. Kry's request to continue the trial date, that the Cambodian government will process visas within seven days. *See* ECF No. 120 at 4.

[2] In the interest of completeness, the entirety of defense counsel's letter to the Office of International Affairs ("OIA") within the Department of Justice is enclosed as Exhibit A. The letter describes serious concerns regarding the procedures followed by U.S. Fish and Wildlife Agents, acting at the direction of AUSA Watts-Fitzgerald, in investigating this case. Defense counsel's investigation has revealed that (i) USFWS agents and AUSA Watts-Fitzgerald failed to secure OIA's approval to conduct a clandestine intelligence gathering operation in Cambodia, with the aim of indicting Cambodian government offiicals, (ii) the government's cooperating witness violated Cambodian law, and (iii) agents were aware of such unlawful conduct. Notably, the government's response is not that it secured such approvals, but that the government can engage in an illegal investigation overseas so long as the defendant is arrested in the United States. *See* ECF No. 160 at 5 n.2.

advisory.html (describing Cambodia as safe to visit by U.S. citizens). In light of the government's vague and unsubstantiated proffer of "countervailing factors," the Court should reject the government's request that the witnesses testify via videoconference. *See* ECF No. 160 at 7-8. As the Eleventh Circuit has acknowledged, and the government has conceded in other cases—including *Yates*—taking Rule 15 depositions by two-way videoconference is not authorized by the Federal Rules of Criminal Procedure. *See United States v. Yates*, 438 F.3d 1307, 1314 (11th Cir. 2006).

Mr. Kry has the right to present witnesses in his defense. When those witnesses are not available in the United States, Rule 15 provides the extraordinary remedy of allowing a defendant to obtain testimony through foreign depositions. Mr. Kry has demonstrated that each of these witnesses is unavailable, in part due to the government's refusal to provide the witnesses with safe passage letters, and that each witness possesses material testimony. The government's remaining objections to the depositions are based on speculation and conjecture, and do not justify depriving Mr. Kry the ability to secure these witnesses' live testimony in Cambodia.

## CONCLUSION

For the reasons stated above, Mr. Kry respectfully moves the Court to grant his motion for Rule 15 depositions.

Dated: August 14, 2023                Respectfully submitted,

By:   **Mark J. MacDougall**
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
Allison T. Coffin (*Pro Hac Vice*)
Dakota L. Kann (*Pro Hac Vice*)
Jane M. Mahan (*Pro Hac Vice*)
Nicole L. Franklin (*Pro Hac Vice*)
*Counsel for Masphal Kry*

6

Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 887-4000
Fax: (202) 887-4288
E-mail: mmacdougall@akingump.com
shmitchell@akingump.com
acoffin@akingump.com
dkann@akingump.com
jmahan@akingump.com
nfranklin@akingump.com

**John R. Byrne**
John R. Byrne (Fla. Bar Number: 0126294)
john@maderalbyrne.com
*Counsel for Masphal Kry*
Maderal Byrne & Furst PLLC
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 520-5690