UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20340-CR-WILLIAMS/REID

UNITED STATES OF AMERICA,

vs.

MASPHAL KRY,

        Defendant.
_____/

**RESPONSE IN OPPOSITION TO DEFENDANT KRY'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR, IN THE ALTERNATIVE, TO CONDUCT AN EVIDENTIARY HEARING UNDER RULE 104(A)**

    The United States of America hereby responds in opposition to Defendant Masphal Kry's motion *in limine* and request, in the alternative, for a hearing under Federal Rule of Evidence 104(a) (DE 201). Kry asks this Court for (1) an order excluding all coconspirator statements or, alternatively, a pretrial hearing to determine the admissibility of any such statements and (2) an order excluding all evidence related to conduct undertaken by "black market suppliers" or, alternatively, a pretrial hearing to determine the admissibility of such evidence.

    This Court should deny Kry's motion for several reasons. First, Kry overstates the government's burden under Federal Rule of Evidence 801(d)(2)(E). Kry claims the government cannot show the existence of a conspiracy that included him, as Rule 801(d)(2)(E) requires, because the government lacks sufficient proof of his knowledge. But conspiracy as a matter of substantive criminal law differs from conspiracy as part of the Rule 801(d)(2)(E) principle. And though the former requires the government to prove, as an element, the defendant's guilty knowledge, the latter does not. Indeed, a Rule 801(d)(2)(E) "conspiracy" does not have to be

charged and need not even be criminal. *See, e.g., United States v. Monaco*, 702 F.2d 860, 880 n.35 (11th Cir. 1983).

Second, Kry fails to explain the need for a pretrial *James* hearing at this stage. That procedure is not mandatory. To the contrary, courts in the interest of judicial economy, and consistent with the explicit language of Rule 104(b), regularly admit coconspirator statements conditionally, subject to the later marshaling of sufficient proof (either in the form of trial evidence or inadmissible evidence proffered outside the presence of the jury) to make the required showing. Herein, the government expects to introduce ample independent evidence at trial showing Kry's participation in and knowledge of the conspiracy. Indeed, this Court has already seen some of that evidence, including a video introduced by the government at the suppression hearing during which Kry evidences a concern over concealing the ongoing criminal conduct from observers in Cambodia and makes open reference to the monkey "smuggling" operation in which he and the other coconspirators were engaged.

Third, Kry identifies only two coconspirator statements upon which he believes the government will rely at trial, despite asking for a blanket exclusion of all others. That disconnect speaks for itself: this Court should not make an evidentiary ruling on evidence not yet placed before it. Nor should this Court accept Kry's promise of an "unwieldy procedure" at trial. This Court is well-equipped to rule on Kry's anticipated objections to "each extrajudicial statement that the government attempts to admit through the confidential informant" as they arise throughout trial.

Finally, this Court should deny as well Kry's request for a blanket exclusion of all evidence of "black market suppliers." The pending indictment appropriately alleges that the government agency of which Kry was a senior employee was one of the "black market suppliers," and Kry

2

offers no creditable basis why the government should not be permitted to prove that allegation at trial. Nor is a pretrial hearing necessary for this Court to determine the relevance or admissibility of evidence of other suppliers.

## Background

On November 3, 2022, a federal grand jury returned a superseding indictment charging Kry with conspiracy to import and smuggle wildlife in violation of 18 U.S.C. § 371 (Count 1) and smuggling in violation of 18 U.S.C. § 545 (Counts 2-8) (DE 9). As alleged in the superseding indictment, Kry and multiple coconspirators, charged and uncharged, sought to illegally smuggle long-tailed macaques into the United States for financial gain (DE 9:7).

To do so, they (1) utilized various facilities, including VBRC in Cambodia, purportedly to breed and supply long-tailed macaques for sale, (2) contracted with customers in the United States to sell and export purportedly captive-bred macaques from Cambodia to the United States, (3) illegally purchased long-tailed macaques from black market suppliers, including the Ministry of Agriculture, Forestry and Fisheries (MAFF), and (4) used MAFF to secure CITES export permits falsely identifying wild-caught macaques as captive bred, all to act as a source for wild-caught macaques, and to provide permits to transport captive-bred macaques unsuitable for trade to a facility to be euthanized, allowing their identification tags to be transferred to wild-caught macaques and thereby "launder" them, to make them appear captive bred (DE 9:8).

In furtherance of the conspiracy, the superseding indictment additionally alleged among its overt acts, that Kry made four specific deliveries of 13, 24, 20, and 35 wild-caught long-tailed macaques to the VBRC facility (DE 9:13-15). These deliveries were electronically recorded. Additional wild-caught macaques came from other "black market suppliers" (*id.*). For example, about a week after Kry personally made a delivery of wild-caught long-tailed macaques to the

VBRC facility, "Black Market Supplier A was paid approximately $4,840 for the delivery of approximately 22 wild-caught long-tailed macaques to the VBRC facility at Pursat" (DE 9:15).

The superseding indictment additionally alleged that one of the named coconspirators, Raphael Cheung Man, wrote two emails to several other coconspirators in which he described meetings with Kry. In the first email, Cheung Man reported that he met with MAFF officials, including Kry, and had discussed a price for "official" and "unofficial" quotas (DE 9:11).[1] In the second, Cheung Man reported that he met with the MAFF collection team leader, Kry, and advanced him $10,000 to ensure he would collect the wild-caught long-tailed macaques (DE 9:12). They agreed that MAFF would collect and deliver 300 macaques weighing between 2 to 4 kilograms within the month, and that VBRC would reject any inferior animal (*id.*).

The full contents of these two emails were turned over in discovery and form the basis of Kry's motion *in limine*.

## Argument

I.  **This Court should deny Kry's request for a blanket exclusion of all coconspirator statements and request, in the alternative, to hold a pretrial *James* hearing.**

Under the Federal Rules of Evidence, a statement is not hearsay if the proponent offers it "against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Rule 801(d)(2)(E) requires the proponent to prove, by a preponderance of the evidence, that "(1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Harris*, 886 F.3d 1120, 1130 (11th Cir. 2018) (quotation marks omitted).

---

[1] The United States expects that evidence will be adduced at trial establishing the "unofficial quotas" referenced in the indictment have no support in relevant Cambodian law and existed only in the lexicon of the coconspirators.

4

To make this finding, the district court "may rely on information provided by the coconspirator's proffered statement as well as independent external evidence." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). But the information from a coconspirator's proffered statement cannot on its own establish the existence of a conspiracy or the defendant's participation in it. Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E)."). Instead, the proponent must produce some independent evidence of a conspiracy. *United States v. Hough*, 803 F.3d 1181, 1193 (11th Cir. 2015).

A conspiracy under Rule 801(d)(2)(E), however, is not the same as a conspiracy as a matter of substantive criminal law. In fact, a Rule 801(d)(2)(E) conspiracy need not even be criminal. Instead, the rule "allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise." *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009); *see also Monaco*, 702 F.2d at 880 n.35 (Rule 801(d)(2)(E) "'is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a co-conspirator for the purposes of this rule even though no conspiracy has been charged'") (quoting S.Rep. No. 1277, 93rd Cong., 2d Sess., 26–27 (1974)).

In this case, that means the government need not make a preliminary showing, as Kry insists, that Kry knew "that the monkeys he delivered to VBRC would be exported . . . to the United States under false CITES permits" (DE 201:6). At this stage, the government need merely show that Kry was engaged in some joint enterprise (criminal or not) with Raphael Cheung Man, the author of the two emails Kry challenges on motion, and that Cheung Man sent the emails in furtherance of that enterprise. *See Harris*, 886 F.3d at 1130. It is the jury, after all, that will determine whether Kry's participation in that enterprise was a crime.

5

Even assuming Rule 801(d)(2)(E) requires the government to show Kry's guilty knowledge by a preponderance of the evidence, Kry fails to show the need for this Court to hold a pretrial hearing to make that determination. Kry relies almost exclusively on the case of *United States v. James*, 590 F.2d 575 (5th Cir. 1979), to support his demand for a hearing.[2] Post-*James,* the Eleventh Circuit has held repeatedly and explicitly that a pretrial hearing is not mandatory. *See, e.g., United States v. Van Hemelryck*, 945 F.2d 1493, 1498 (11th Cir. 1991) (determination of admissibility of co-conspirator statements under Fed. R. Evid. 801 (d)(2)(E) "need not be made prior to trial"); *United States v. Allison*, 908 F.2d 1531, 1534 n.2 (11th Cir. 1990) ("[Defendant] claims he was entitled to a James hearing prior to admission of the offending statement. This is not true."); *United States v. Norton*, 755 F.2d 1428, 1431 (11th Cir. 1985) (same); *United States v. Lippner*, 676 F.2d 456, 464 (11th Cir. 1982) ("We have never mandated such a hearing …"); *see also United States v. Burke*, 673 F.2d 1574, 1579 (N.D. Ga. 1986) (a *James* hearing "is most appropriately held at the time of trial"), aff'd, 856 F.2d 1492 (11th Cir. 1988).

And courts regularly admit coconspirator statements "subject to the government later connecting them up with sufficient evidence." *Allison*, 908 F.2d at 1534 n.2 (internal quotation marks omitted); *see also United States v. Fernandez*, 797 F.2d 943, 945-46 (11th Cir. 1986) (no error in district court's decision to admit coconspirator statements during trial and then rule on the applicability of the 801(d)(2)(E) exclusion after the government's case in chief, because a district court may "admit these statements subject to proof of the [rule's requirements] during the course of trial"); *Norton*, 755 F.2d at 1431 ("[I]t is acceptable for the trial court to permit the evidence to

---

[2] Two other cases cited by Kry in support of a preliminary hearing relate to the admissibility of a prior conviction and the admissibility of polygraph evidence – bear scant relevance to the facts and circumstances of the coconspirators statements herein. *See* D.E. 201: 6.

6

proceed chronologically, without holding a *James* hearing, relying upon the government to 'connect up' the co-conspiratorial statement").

That process makes sense in a conspiracy case like the instant matter, because the evidence required to lay a foundation for the admission of any coconspirator statements will involve much of the same evidence that the government will offer during its case-in-chief to prove the conspiracy and substantive . In other words, a pretrial *James* hearing—especially as Kry views it—would require the government to essentially try its case twice. *Cf. Lippner*, 676 F.2d at 464 (no error in denying pretrial hearing where "a *James* hearing would in essence have required trying the case twice to show the admissibility of [the co-conspirator's] statements, and would itself have wasted the judicial resources *James* was designed to conserve").

Kry urges this Court to deviate from normal practice and conduct a wasteful minitrial regarding the conspiracy because of the possible danger of unfair prejudice presented by this Court's conditional admission of the two coconspirator emails he identifies in his motion. But Kry has several remedies at his disposal if this Court finds the government fails to make the required connection. For one, Kry could move for a directed verdict under Rule 29 of the Federal Rules of Criminal Procedure. For another, this Court could instruct the jury to disregard the statements. And though Kry discounts the effect of such an instruction, the Eleventh Circuit has "repeatedly said that a jury is presumed to follow the instructions given to it by the district judge." *United States v. Mosquera*, 886 F.3d 1032, 1042 (11th Cir. 2018) (internal quotation marks omitted).

In any event, the government anticipates introducing ample evidence to lay the proper foundation for any coconspirator statements and establishing Kry as a knowing member, complicit in the illegal export of wild caught macaques. The government's cooperating individual, as Kry well knows, functioned in a management role at the VBRC facilities in Cambodia, including the

location where Kry delivered wild-caught monkeys in exchange for money. In his Motion (D.E.-201:3), with the doubly dramatic emphasis of boldfaced and italicized type, Kry asserts that:

> "***Nowhere in the Indictment*** (a) is Mr. Kry alleged to have known that the monkeys he delivered to VBRC would be exported to the United States, or (b) are facts alleged to support the theory that Mr. Kry agreed to participate in a conspiracy to export long-tailed macaques to the United States under false *CITES* permits."

This statement is belied by the allegations set forth in the Overt Acts of the conspiracy, D.E.- 9:8 at paragraphs 12 (Kry agreeing to payment schedules for both "official" and "unofficial" quotas of wild-caught monkeys, and assuring that the "unofficial" monkeys would be concealed from the local officials of MAFF), 15 (wherein cash was advanced to Kry as "team leader" and agreement struck to deliver 300 monkeys within the month), 20, 24, and 32 (reflecting deliveries by Kry of wild-caught macaques). The accuracy of the claim on Motion is rendered almost ludicrous in light of Overt Act paragraph 21, another delivery meeting, caught on video, during which Kry advised the witness that they could make the "smuggling" enterprise safer by creating a back road to the facility. That video, in English, is already in the Court's record as Exhibit 5A-B to the Hearing on Motion To Suppress, held by Magistrate Jude Lissette Reid. *See* D.E.-104 [exhibits filed conventionally with the Clerk of the Court per Local Rules].

By any reasonable interpretation, Kry's references to the safety of the illegal operation and the smuggling venture are manifestly probative of his knowledge of the nature of his conduct and his willful participation in the conspiracy. Since the cooperating individual was a direct participant in the exchange, the admissibility of the evidence should pose little problem and its relevance to the issues at bar obvious.[3]

---

[3] On Motion at 7, Kry asserts that document certified by the Kingdom of Cambodia ". . . support the position that Mr. Kry understood that the wild-caught monkeys would become breeding stock at VBR." This argument is deficient for several reasons. First, there is no evidence of record that Kry was aware of the language in the government documents. His witness depositions are silent on the subject and there are no documents produced in discovery indicating any such knowledge on his part. Second, assuming *arguendo,*

8

**II.      This Court should deny Kry's request for a blanket order excluding evidence of "black market suppliers."**

The government is mindful of this Honorable Court's comments at the status conference held on December 18, 2023, regarding the need to focus the trial proceedings on the conduct of defendant Kry and to limit the scope of evidence of extensive activities on the part of the other coconspirators to only that necessary and sufficient to provide "context" to the jury. The government has no wish to needlessly prolong the trial proceedings beyond the evidentiary presentation necessary to acquaint the jury with the breadth of the criminal conduct of the coconspirators, whose activities in conjunction with Kry are set forth in the indictment.

As the indictment makes clear, Kry, his superior at MAFF, Keo, and the other directly charged defendants are not the sole coconspirators. The "black market suppliers" were individuals known to the Grand Jury as recited in the "Purpose of the Conspiracy." D.E.-9:7 ¶ 3. The indictment makes further specific allegations that the "black market suppliers" including through the actions of the MAFF employees recited in the indictment, were illegally providing long-tailed macaques primarily delivered to the Pursat VBRC facility. *Id.:*7-8 ¶¶ 7-8. Thus, proof of the existence and operation of the other suppliers is relevant in establishing the conspiracy as charged by the Grand Jury. With respect to the conspiracy charge, evidence of the conduct of the other suppliers is also inextricably intertwined, despite there being no substantive offenses charged with respect to the un-named marketers. *See United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir.1998) (evidence of an uncharged criminal act is intrinsic if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2)

---

that Kry was aware of the language of the documents, he clearly knew otherwise since he discussed the smuggling of the macaques with the cooperating individual, thereby demonstrating his knowledge of the intended illegal export of the macaques and his willingness to violate the restrictions placed by the Kingdom of Cambodia on the employment and use of the macaques he was delivering to VBRC.

necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."). The Eleventh Circuit has explained that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Holt*, 777 F.3d 1234, 1262 (11th Cir. 2015) (*citing United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)). The government need not prove that Kry had knowledge of all details and phases of the conspiracy. *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015); *United States v. Guerra*, 293 F.3d 1279 (11th Cir. 2002). The government's evidence will demonstrate that Kry knew the essential nature of the conspiracy as described in the Purpose and Manner and Means statements, in part through the matters discussed, *supra*, including his personal delivery activities, his comments, and the materials reflected in the communications amongst the named coconspirators. It is clear that Kry need not have been privy to all aspects of the on-going conspiracy, nor that he agreed to commit or facilitate each and every part of the substantive offenses charged. *Salinas v. United States*, 522 U.S. 52 (1997).

The evidence intended to be presented in this matter will establish that Kry's actions contributing to the conspiracy were contemporaneous to the conduct of the other black-market suppliers, that they shared in all critical particulars a *modus operandi*, and were coordinated in their activities by one or more of the named coconspirators. Further, the evidence will demonstrate that all the suppliers of wild-caught long-tailed macaques were paid by the VBRC coconspirators and records maintained reflecting the amounts paid based on the number of specimens provided. Taken collectively, their joint activity will present the complete picture of the conspirators actions to the jury. The government does not, however, intend to produce before the jury the dozens of

videotapes and related items of evidence that document the conduct of the other suppliers, but will establish the necessary facts in a more summary fashion through witness testimony and the production of a limited number of exhibits.

## Conclusion

Based upon the foregoing arguments and authorities, the United States respectfully requests this Honorable Court deny at this time Defendant Masphal Kry's motion *in limine* and request, in the alternative, for a hearing under Federal Rule of Evidence 104(a), and address such evidentiary issues as may arise at the time of trial.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   /s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney
Florida Bar No. 0273538
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9413

By:   /s/ Emily R. Stone
Assistant United States Attorney
Florida Bar No. 92077
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel. 305-961-9407

## CERTIFICATE OF SERVICE

I hereby certify that on December 29th, 2023 I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

By: /s/ Thomas A. Watts-FitzGerald

Assistant U.S. Attorney