UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20340-WILLIAMS/REID

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MASPHAL KRY,

    Defendant.
_____/

**ORDER ON DEFENDANT MASPHAL KRY'S MOTION TO EXCLUDE
THE TESTIMONY OF THE GOVERNMENT'S PROPOSED EXPERT WITNESS**

This cause is before the Court on Defendant Masphal Kry's Motion to Exclude the Testimony of the Government's Proposed Expert Witness, Dr. Agustin Fuentes (the "Motion"). [ECF No. 212]. This matter was referred to the Undersigned pursuant to an Order of Referral by the Honorable Kathleen M. Williams. [ECF. No. 213]. The Court has reviewed the Motion, the Government's Opposition [ECF. No. 217], and Defendant's Reply [ECF. No. 225], as well as all the documents submitted in support of the parties' filings, the pertinent portions of the record, and all relevant authorities. For the reasons addressed below, it is **ORDERED** that the Motion [ECF No. 212] be **DENIED**.

**BACKGROUND**

Kry is charged with conspiracy to violate several provisions of the Lacey Act and Smuggling, specifically smuggling Longtail Macaque monkeys ("LTMs") from Cambodia into the United States. [*See* ECF Nos. 9; 217 at 1]. Before the start of trial, currently set to begin in March of 2024, Kry seeks to exclude the testimony of the Government's expert witness, Dr. Fuentes, for

1

failing to meet the requirements of Rule 702 of the Federal Rules of Evidence. [*Id.* at 6]. Kry challenges all seven topics that Dr. Fuentes is expected to testify about at trial, which include:

1. The LTM is the most traded primate species.

2. The United States is the destination for the majority of the traded LTMs.

3. The LTM is the most culled primate species.

4. Given the number and diversity of threats, the LTM can be seen as one of the most endangered primate species currently.

5. LTMs are able to exist in a variety of habitats, including human-altered habitats.

6. The native geographic range of the species includes, inter alia, Cambodia, Thailand, Indonesia, Malaysia, the Philippines, Singapore, and Vietnam.

7. The testimony will also cover the life history of LTMs, including their typical size ranges, reproductive capacity, susceptibility to diseases, and capacity as vectors of zoonotic diseases.

Government's Report, ECF No. 212 at 2.

The Government's expert disclosure also included a nearly two-hour audio recording of the Government's 2020 interview with Dr. Fuentes. [ECF No. 214].

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003)

(citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 594–95 (1993)). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id*.

As to qualifications, an expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id.* So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id.*

Next, in determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected

to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. These criteria apply to both scientific opinions and experience-based testimony. *Frazier*, 387 F.3d at 1261–62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

Finally, on the issue of helpfulness, expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre*, 308 F. App'x. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## **DISCUSSION**

Defendant Kry challenges the entirety of Dr. Fuentes' expected testimony based on his qualifications, the reliability and relevance of the testimony, and the potentially high likelihood of prejudice to Defendant and confusion for the jury. [ECF No. 212 at 12]. In his Motion, Kry re-classifies the seven topics outlined in the Government's report into three general topics: (1) the "life history" of the long-tailed macaque (encompassing topics 6 and 7 of the Government's report); (2) behaviors and status of long-tailed macaques in the wild and in captivity

(encompassing topics 4 and 5 of the Government's report); and (3) the volume of international trade in the species from its various ranges and introduced ranges (encompassing topics 1–3 of the Government's report). [ECF No. 212 at 7–8].

The Court will in turn address these three categories in the context of the "qualifications," "reliability," and "helpfulness" prongs—including Defendant's Fed. R. Evid. 403 arguments. *Frazier*, 387 F.3d at 1260.

## I. DR. FUENTES' QUALIFICATIONS

Defendant Kry challenged the Government's expert's qualifications for his academic focus on topics such as human evolution, racism, masculinity, sex/gender issues, and multispecies anthropology, among others. [ECF No. 212 at 12]. He argues that Dr. Fuentes is an anthropologist, not a primatologist. [*Id.*]. In the context of the issues he intends to testify about, Dr. Fuentes' specialty, Kry argues, does not encompass LTMs. [*Id.* at 12–13].

While Dr. Fuentes has considered issues relating to LTMs, Defendant argues that his focus is on the interactions between humans and primates; issues which are "not relevant to the offenses with which Mr. Kry is charged and clearly not before the Court." [*Id.* at 13]. This criticism is applied to all three topics that Dr. Fuentes intends to testify about. Nonetheless, Kry specifically challenges the first two topics regarding the life history and behavior of the animal, arguing that the expert has little to no first-hand experience studying LTMs in Cambodia. [*Id.*]. On the third topic regarding the volume of international trade in the species, Kry argues the expert's contribution to articles on primate trade focus on Indonesia and "contain only anecdotal references to the number of long-tailed macaques observed in Indonesian bird markets." [*Id.* at 14].

Conversely, the Government highlights Dr. Fuentes' experience in the field of primatology, consisting of approximately 50–60 scholarly articles, a majority of which focus on LTMs. [ECF

No. 217 at 2]. His extensive CV provides insights regarding his work in anthropology and primatology, which includes field work relating to LTMs. [*Id.*; ECF No. 212 at 5–45]. The government argues that Dr. Fuentes' title as "Professor of Anthropology" as opposed to "Professor of Primatology" goes to the weight of the evidence, not its admissibility. [*Id.*]. Primatology, it explains, is a sub-field of anthropology. [*Id.* at 5].

The Government has the better argument here. Dr. Fuentes is certainly more than "minimally qualified" to opine on the topics outlined in the Government's report. *Lebron v. Royal Caribbean Cruises, Ltd.*, 16-24687-CIV, 2018 WL 3583002, at *8 (S.D. Fla. July 26, 2018) (quoting *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009). The expert has authored and co-authored books and peer-reviewed articles on LTMs, is a member of the International Union for the Conservation of Nature's ("IUCN") SSC Primate Specialist Group, and is the editor-in-chief of the International Encyclopedia of Primatology. [*Id.* at 6].

Furthermore, Defendant's argument that Dr. Fuentes' qualifications have no relation to the charges of conspiracy and smuggling falls short. His testimony will provide "qualitative research and findings . . . with respect to the lifecycle and biology of LTMs, two important factors considered by pharmaceutical companies when importing non-human primates to use in their medical research and testing, and highly relevant to the government's case." [*Id.*]. The Government proffers additional points that go to the relevance of Dr. Fuentes' testimony, which will be addressed in the sections that follow.

II.   **THE RELIABILITY OF THE TESTIMONY**

Next, Kry asserts that Dr. Fuentes' testimony lacks a reliable foundation. [ECF No. 212 at 14]. On the expert's view that LTM's "can be seen as one of the most endangered primate species

currently," Defendant challenges the source of Dr. Fuentes' testimony, the IUCN's Red List of Threatened Species. He argues that this source merely states that LTM's are "possibly one of the most endangered primate species currently" and is in tension with the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") Appendix II designating LTM's as "not necessarily now threatened with extinction but may become so unless trade is closely controlled." [*Id.* at 13–14]. Further, a 2023 article by Ray Hilborn and David R. Smith challenges Dr. Fuentes' conclusion regarding the population of LTMs. [ECF No. 212-7 at 2]. These disparities, Kry argues, warrant exclusion of the expert's testimony. In response, the Government argues, *inter alia*, that Dr. Fuentes is a member of IUCN, and the 2023 article has been challenged by competent primatologists. [ECF No. 217 at 7].

The Court disagrees with Defendant's handpicked selection of publications that only slightly vary from Dr. Fuentes' potential testimony. Indeed, any inconsistencies, including challenges to Dr. Fuentes' research, do not warrant the "drastic sanction" of excluding the expert's testimony. *SFR Services LLC v. Elec. Ins. Co.*, 8:19-CV-2013-CPT, 2021 WL 1193284, at *5 (M.D. Fla. Mar. 30, 2021). At bottom, this argument goes to credibility, not the threshold standard for reliability established by the Supreme Court in *Kumho Tire Co.*, which assesses: whether the expert's methodology can be tested, whether it is subject to peer review or publication, the potential rate of error of the technique used, and whether it is generally accepted in the community. 526 U.S. at 152. Kry's discussion regarding these requirements is limited to conclusory challenges that Dr. Fuentes used "questionable methodologies[,]" his "articles are dated[,]" and his methodology "cannot be tested." [ECF No. 212 at 14]. This is simply not enough to disqualify the expert.

7

More importantly, the challenged reports do not encompass the expert's 30+ years of study in the field and relevant experience. As the Government states in its Opposition, "[Dr. Fuentes] can explain at trial the various studies he has considered in reaching that opinion" and can "further testify that he is familiar with the generally accepted practices in the scientific community for population sampling of wildlife because he has actually performed those duties in his own field research." [ECF No. 217 at 6]. Despite Kry's criticisms, the proffered testimony meets the admissibility requirements set forth in *Kumho Tire Co.*

Defendant's challenge closes with an attack on the expert's public statements regarding LTMs. [ECF No. 212 at 16]. Following the indictment, the expert stated that he is "extremely happy to see indictments happen" and is "very positive news for the long-tailed macaque." [*Id.*]. These allegations of bias can be readily addressed on cross-examination. "[A]llegations of bias are attacks against credibility. And a witness's credibility goes to the weight of the evidence – not admissibility." *Zaccone v. Ford Motor Co.*, No. 2:15-CV-287-FTM-38CM, 2017 WL 11532918, at *1 (M.D. Fla. Apr. 17, 2017) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986)).

### III. THE HELPFULNESS OF THE TESTIMONY

Defendant only briefly challenges the helpfulness of the expert's testimony. He argues that testimony regarding the life history of LTM's, their behavior and status in the wild and in captivity, the volume of international trade in the species, and the threats facing the animals has "nothing to do with any material fact that the government must prove in this case." [ECF No. 212 at 18]. Certainly, the jury's determination is *not* whether LTM's are the most traded primate species or whether they are shipped, as Kry argues. [*Id.*]. But the proposed testimony is undoubtedly "beyond the understanding of the average lay person." *Edwards v. Shanley*, F. App'x 816, 823 (11th Cir.

2014) (quoting *Frazier*, 387 F.3d at 1262). This is not a case where the "trier of fact is entirely capable of determining whether or not to draw [the expert's] conclusions without any technical assistance" from the expert. *City of Tuscaloosa,* 158 F.3d at 565. Even so, "[t]he 'basic standard of relevance . . . is a liberal one,' [ ] but if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit'." *Boca Raton Community. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (quoting *Daubert*, 509 U.S. at 587 and *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)).

Here, the Government's Opposition highlights additional key aspects of his testimony that are relevant to its charges and meet the liberal standard of relevance, such as the nexus between the stock of animals in a breeding colony and the motive of the conspiracy that is alleged. [ECF No. 217 at 8]. The testimony will also provide context regarding the time and expense involved in captive raising of LTMs, shed light on alleged profits of the co-conspirators, and will serve to rebut the testimony of one of the Defendant's witnesses. [*Id.*].

Lastly, Defendant alleges that the Government seeks to introduce evidence beyond the scope of the seven topics listed in its disclosure. [CF No. 225 at 7]. Specifically, he takes issue with the Government's proposed testimony outlined in its Opposition regarding "the time needed to develop and replenish the stock of animals in a breeding colony" and the Government's plan to rebut the Defendant's witness regarding the behavior of LTMs. [*Id.*]. These opinions, at a minimum, go to the proposed testimony regarding LTMs' behavior and ability to exist in certain habitats as well as their reproductive capacity. [*See* ECF No. 212 at 2].

**IV.   FED. R. EVID. 403**

Finally, Defendant argues that Dr. Fuentes' testimony is "unduly prejudicial, cumulative, and likely to confuse the jury." [ECF No. 212 at 19].

9

A district court may exclude relevant evidence under Rule 403 if "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see Daubert*, 509 U.S. at 595. Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013) (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

First, Kry challenges the introduction of testimony regarding LTMs being "the most culled primate species" and "one of the most endangered primate species." [ECF No. 212 at 20]. Confusion to the jury will result, he argues, because the IUCN's categorization of the LTMs came into effect months after the alleged over act in the charged conspiracy. [*Id.*]. He further argues that the list itself is of "no legal consequence[,]" relying instead on CITES, the "governing treaty ratified by Congress[.]" [*Id*. at 20].

Defendant's argument does not convince the Court that the probative value of Dr. Fuentes' testimony would be substantially outweighed by the danger of unfair prejudice or confusion. Dr. Fuentes' extensive experience in the field of primatology has already been discussed at length. *See* Discussion § I. The proposed testimony would not be prejudicial, as his testimony serves to "fully explain to a jury the categorical changes [of the IUCN classification], the dates when those changes occurred, and why those changes happened." [ECF No. 217 at 9]. Additionally, it is unclear to the Court how the date that the IUCN came into effect would confuse the jury. Its relation to the date of the last alleged overt act is even less clear. But above all, this argument is unconvincing because

Defendant provides no evidence supporting its conclusion that the IUCN Red List is of "no legal consequence." [ECF No. 212 at 20]. Contrary to Kry's cited case law, in which he provides two cases where district judges excluded expert testimony based on "foreign regulatory matters" and "foreign regulatory actions[,]" the IUCN, on its face, does not appear to fit within these two excluded categories. [*See* ECF No. 225 at 9]. The IUCN is an organization that "provides insight through their publications and studies into the status of wildlife worldwide" and is "regularly relied upon by governments and other organizations." [ECF No. 217 at n.5]. *In re Trasylol Prods. Liab. Litig-MDL-1928*, 709 F. Supp. 2d 1323, 1336-37 (S.D. Fla. Apr. 27, 2010) is unconvincing because there, the expert herself "conceded that she is not an expert in [foreign regulatory matters]." Here, even if the IUCN's findings were classified as foreign regulatory matters, Dr. Fuentes has knowledge of the IUCN's findings considering his years of experience and his role as a member of the group. [ECF Nos. 217 at 9; 212-1 at 2–3]. *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) is equally unavailing, as the excluded evidence there encompassed regulatory *actions* in foreign countries such as Japan, France, and Holland. This is clearly not the case here.

Second, Kry challenges the proposed testimony that "[t]he United States is the destination for the majority of the traded LTMs." Kry argues that this testimony will go to his mental state, in violation of Fed. R. Evid. 704(b). [ECF No. 212 at 21]. Specifically, the testimony would allegedly show that Kry "should have known that the specific shipments of long-tailed macaques would be shipped to the United States." [*Id.*]. But nowhere does the Government state that this testimony will go to Kry's mental state. To the contrary, the seven topics listed in the Government's disclosure do not allude to Kry's mental state. The Government's Opposition further clarifies that the testimony is *not* being introduced to show the Defendant's mental state, but to provide context

11

and support the factual testimony to be given by a confidential information and the agents expected to testify at trial. [ECF No. 217 at 9]. Therefore, exclusion is not warranted at this stage. Defendant may instead raise this objection at trial.

Finally, Kry challenges Dr. Fuentes' testimony regarding the "life history" of LTMs as cumulative because the defense expects that much of the same testimony will be elicited from the Government's fact witness. [ECF No. 212 at 22]. The topic would apparently confuse the jury because "[t]his case hinges on whether Mr. Kry knew that the specific animals that he delivered to [the breeding facility owned by Vanny Bio-Resource (Cambodia) Corporation, Ltd. ("VBRC")] would be exported outside of Cambodia for commercial use or whether he knew that VBRC would be using these animals for breeding purposes." [*Id.*].

Testimony regarding the "life history" of LTMs, which includes the geographical range, size, reproductive capacity, and other attributes of LTMs, would not confuse the jury but would "logically advance[ ] material aspect[s] of the case[,]" which, at its core, involve the alleged smuggling of LTMs. *See Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown*, 392 F.3d at 1299). In any case, "the fact that [experts'] testimony and opinions may overlap to some extent does not demonstrate a sufficient basis of . . . needless presentation of cumulative evidence under Fed. R. Evid. 403 to bar the testimony of either witness." *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260, 2018 WL 2471215 at *5 (S.D. Fla. April 10, 2018) (citation omitted). Rule 403's "extraordinary remedy" does not apply here. *Patrick*, 513 F. App'x at 886.

## CONCLUSION

Based on the foregoing, the Court orders that Defendant Masphal Kry's Motion to Exclude the Testimony of the Government's Proposed Expert Witness, Dr. Agustin Fuentes [ECF

No. 212] be **DENIED.**

      **SIGNED** this 20th day of February, 2024.

                                                  LISETTE M. REID
                                                UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Kathleen M. Williams**; and

        **All Counsel of Record**